IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| TURHAN JAMAR LAMONS,<br>Inmate # BOP Reg. 54402-019, | CIVIL ACTION FILE NO.<br>4:09-CV-180-RLV |
| Movant, | |
| | CRIMINAL ACTION FILE NO.<br>4:03-CR-046-01-RLV |
| v. | |
| UNITED STATES OF AMERICA, | MOTION TO VACATE<br>28 U.S.C. § 2255 |
| Respondent. | |

## FINAL  REPORT  AND  RECOMMENDATION

By Order dated March 8, 2011 [265], the Honorable Robert L. Vining, Jr.,

Senior United States District Judge, referred this matter to the undersigned to

conduct an evidentiary hearing on the claim by movant, Turhan Jamar Lamons, that

his former trial counsel, Bruce Harvey, Esq., provided ineffective assistance in

connection with pretrial plea negotiations.  The undersigned conducted a hearing on

May 11, 2011 [269], which has been transcribed [271-1] (hereafter "Tr.").[1]  The

parties submitted post-hearing briefs [271, 274, 275, 276].  For the reasons explained

---

[1] Unless otherwise indicated, all citations to the record in this Report and
Recommendation refer to case number 4:03-CR-46-RLV.

below, the undersigned **RECOMMENDS** that defendant's Motion to Vacate [250] on the ground of ineffective assistance of counsel be **DENIED** and that movant be denied a certificate of appealability.

## I.   RELEVANT PROCEDURAL BACKGROUND

The Third Superceding Indictment contained Five Counts.  The first three counts arose out of an event that occurred on May 8, 2003, on board ComAir Flight 5491 (the "ComAir incident").  Count One alleged that movant set a fire in that aircraft's lavatory which intimidated members of the flight crew, interfered with the performance of their duties, and lessened their ability to perform their duties, all in violation of 49 U.S.C. § 46504.  (Third Super. Indict., Count One [50].)  Count Two alleged that movant willfully set fire to and damaged, and did attempt to set fire to and damage, the aircraft designated as ComAir Flight 5491.  (Id., Count Two).  Count Three alleged that movant knowingly and unlawfully used fire to commit a felony prosecutible in a court of the United States (i.e., Counts One and Two) in violation of 18 U.S.C. § 844(h)(1).  (Id., Count Three).

The other two Counts arose out of an event that occurred in Clayton County, Georgia, on September 18, 2001, regarding an AirTran passenger jet (the "AirTran incident").  Count Four alleged that movant did willfully and maliciously impart and

convey false information, knowing the information to be false, concerning an attempt and an alleged attempt being made and to be made, to do an act which would be a crime prohibited by 18 U.S.C. § 32(a)(1) and (5), that is, by stating, in substance, to a representative of AirTran Airways, that all of the passengers aboard AirTran Airways Flight 278 were going to die, all in violation of 18 U.S.C. § 35(b).  (Third Super. Indict., Count Four.)  Finally, Count Five alleged that movant did knowingly and willfully, in and affecting interstate commerce, and by means and use of an instrument of interstate commerce, that is a cellular telephone, maliciously conveyed false information, knowing the same to be false, concerning an attempt and an alleged attempt being made, and to be made, to kill and injure the individuals on board AirTran Airways Flight 278 by means of fire and explosives, that is, by stating, in substance, to a representative of AirTran Airways, that all the passengers on board AirTran Airways Flight 278 were going to die, all in violation of 18 U.S.C. § 844(e).  (Id., Count Five.)

The case initially went to trial before the Honorable Harold L. Murphy, United States District Judge, on October 4, 2004, as to all Five Counts.  (Order [82] 1.)  Mr. Lamons took the stand and professed his innocence.  He testified that he had never conveyed false information about damaging an aircraft, setting fire to an aircraft,

wrecking an aircraft, destroying an aircraft, or disabling an aircraft.  He also asserted that he had never maliciously conveyed a false statement with regard to performing an act of violence against any individuals on any aircraft, and that he never maliciously conveyed false information to kill and injure the individuals on board AirTran Airways Flight 278 by means of a fire or explosives.  (Trial Tr. vol. 2, 82-83, Oct. 7, 2004 [85]; see also Gov't Post-Hr'g Br. Ex. F [274-6].)[2]

As the trial progressed, the Court granted defendant's motion to sever Counts Four and Five of the Indictment from Counts One through Three, and the jury was asked to return a verdict only on Counts Four and Five (i.e., the AirTran incident). (Oral Order of Oct. 8, 2004.)  That first proceeding resulted in a mistrial.  (Order of Oct. 15, 2004 [82] 1; see also Tr. 46-47.)

At a second trial held March 21 through 25, 2005, which concerned only the AirTran incident, the jury convicted Mr. Lamons on Count Four, but acquitted him on Count Five.  (See Verdict Form [109]; see also Tr. 19, 47.)  Judge Murphy

_____

[2] The trial testimony obviously related to all the charges made against him. However, at the hearing before the undersigned, Mr. Lamons claimed that he testified at the first trial only with respect to the AirTran incident.  (Tr. 48.)  He denied that he had testified about the charges related to the ComAir incident.  (Id.) Movant's hearing testimony was either false or mistaken.  Given movant's track record, the Court finds the former to be more likely.

4

initially set a trial on Counts One through Three (i.e., the ComAir incident) for May 23, 2005 [113] (later continued to July 11, 2005 [116]), and a sentencing for the aforementioned conviction for June 17, 2005 [110].  However, the following events delayed the planned trial and sentencing.

On June 9, 2005, Mr. Harvey filed a Motion to Continue Sentencing Hearing [118] in which he represented that Mr. Lamons had "serious medical problems, perhaps life threatening, which may require immediate surgery.  He is currently undergoing medical tests, including a CT scan of his stomach area to determine the type of surgery that may be required."  (Id.)  In response to the claimed serious medical problems and Mr. Harvey's busy trial schedule, Judge Murphy continued Mr. Lamon's sentencing in an Order [119] dated June 10, 2005.

Subsequently, on July 14, 2005, Judge Murphy entered an "ends of justice" Order [120] excluding the case from the Speedy Trial Act.  The Court noted that it had unsuccessfully attempted to calendar the case for trial, but that

> [c]onflicts of counsel and the illness of the defendant, Turhan Jamar Lamons, have prevented and continue to prevent a trial of the remaining counts pending before the Court.  Officials of the Court have been informed through defense counsel's office that Mr . Lamons has been and is suffering an illness requiring surgery and post-surgical treatment and intervention.  It appears that his recuperation will take several weeks.

5

(Id.)

Thereafter, on September 13, 2005, Judge Murphy entered the following Order

[121] regarding movant's purported health problems:

> On September 12, 2005 the Court received a letter from the office of defendant's counsel, Bruce S. Harvey, enclosing a copy of a report to Mr. Harvey from Dr. Raymond Rubin on the treatment and condition of the defendant.  The report indicated that the defendant has several complicating health factors.  A second surgery is planned for September 30, 2005 provided he is healthy enough to undergo the procedure at that time.  He also indicates a period of 9 weeks of chemotherapy after the second surgery.

> ACCORDINGLY, this order is entered for the record to show the status of this case; and, the Court will await further reports on the progress of Mr. Lamons' recovery before determining when to schedule further proceedings in this case.

(Id.)

Mr. Harvey filed a Motion to Withdraw [122] on September 15, 2005, after

learning that Mr. Lamons was sending false medical documents to his office,

information which his office had in turn used in filings with the Court.  (Tr. 46, 64.)

Mr. Harvey testified in the evidentiary hearing that he filed that Motion because he

did not want to become involved as a witness in a potential obstruction charge

against Mr. Lamons.  (Id.)

6

Given this development, Judge Murphy recused himself by Order [123] dated September 16, 2005; the case was then assigned to Judge Vining, who set a hearing on Mr. Harvey's Motion to Withdraw for October 5, 2005 [125]. In the meantime, on October 3, 2005, the United States filed a Motion to Revoke Bond [126] against Mr. Lamons. That Motion recounted the aforementioned claims of illness made by Mr. Lamons and contained the following contention:

> [O]n September 12, 2005, FBI Special Agent ("SA") Steven J. Lazarus went to the office of Digestive Healthcare of Georgia and met with Raymond Rubin, M.D. SA Lazarus showed Dr. Rubin a copy of the letter that defense counsel had transmitted to the Court and to the U.S. Attorney's office earlier that same day. See Gov't Exh. 2, p. 2. Dr. Rubin examined the letter and told SA Lazarus that it was a forgery. Dr. Rubin stated further that he never wrote nor signed such a letter and that the letter was not written on proper letterhead for Digestive Healthcare of Georgia. In addition Dr. Rubin recalled that he had conducted an endoscopic examination of defendant in June 2005, the results of which were normal. Dr. Rubin said that he found no signs of cancer present in defendant, and opined that defendant must have used the laboratory report from the endoscopic examination to "cut and paste" together a letterhead, and then concocted the purported letter.

(Mot. to Revoke ¶ 14.)[3]

-------------------

[3] Mr. Lamons's fabrication of the letter from Dr. Rubin was not the first time he had engaged in such misconduct. Mr. Lamons stole checks from his employer and tried to cash them, resulting in a conviction in 2002 for forgery in the first degree in the Superior Court of Fayette County, Georgia. (Tr. 36.)

AO 72A
(Rev.8/82)

SA Lazarus subsequently confirmed with a representative of Mr. Harvey's office (Joy Geske) that the letter purportedly authored by Dr. Rubin had been sent to Ms. Geske by Mr. Lamons. (Mot. to Revoke ¶ 15.) As a result of that investigation, on September 13, 2005, the grand jury returned a single-count Indictment charging Mr. Lamons with corruptly obstructing the sentencing and trial in this matter. (Id. ¶ 16; see also Tr. 51.)[4]

In connection with the new Indictment, SA Lazarus arrested Mr. Lamons and searched his residence pursuant to a search warrant and found the original of the forged letter purportedly authored by Dr. Rubin. (Mot. to Revoke ¶¶ 17-18)[5] Following a detention hearing in the obstruction case, the undersigned detained Mr.

---

[4] Mr. Lamons admitted at the evidentiary hearing that he submitted false documents to Mr. Harvey, but claimed as follows: "I did not myself submit anything to the Court or know that the Court would get the documents." (Tr. 51.)

[5] That Motion further revealed that agents discovered on movant's person two sets of identity documents, one bearing the name Jamarius Sledge, and the other bearing the name Turhan Lamons. (Mot. to Revoke ¶¶ 19-20.) Movant had petitioned the Superior Court of Clayton County for the name change effective March 7, 2005. (Id. ¶ 21.) Although the name change had occurred before his first trial, movant had notified neither the Court nor his pretrial services officer of it; moreover, movant had continued to use his former name until his arrest on September 15, using his new name only when convenient to conceal his real identity. (Id.) For example, movant used his new identity to travel outside the country twice. Movant made both trips without notice to his pretrial services officer and in violation of the conditions of his bond. (Id. ¶ 22.)

8

Lamons.  (See United States v. Lamons, 4:05-CR-066-RLV (N.D. Ga. closed Aug.

10, 2006), Order of Sept. 26, 2005 [11]; see also Mot. to Revoke ¶ 24.)

On October 5, 2005 [127], Judge Vining held a hearing on Mr. Harvey's

Motion to Withdraw and the Government's Motion to Revoke Mr. Lamons's bond.

The Court granted both motions [129, 130] and appointed the Federal Public

Defender to represent Mr. Lamons [128].  (Tr. 46-47.)

At the third trial in this matter held May 8 through 12, 2006, a jury convicted

[200] movant for the ComAir incident (Counts One through Three).  (Tr. 19, 47-48.)

Judge Vining subsequently sentenced Mr. Lamons to 271 months of imprisonment,

and made the following relevant findings:

> [W]hile out on bond, the defendant deliberately deceived the Court, and
> his own lawyer, and the Government in filing fraudulent forged
> documents with the Court pertaining to alleged medical problems
> which turned out to be totally false.  And that shows an absolute
> disrespect for the law, and I have considered that in figuring out what
> sentence is proper for this defendant.

(Gov't Post-Hr'g Br. Ex. E [274-5] (Sentencing Hr'g Tr. 17, Aug. 10, 2006); see also

Tr. 53.)  The Government moved to dismiss the obstruction Indictment at movant's

sentencing hearing.  (Gov't Post-Hr'g Br. [274] 16.)

9

## II.   **THE EVIDENTIARY HEARING**

The Court heard testimony from the movant, Dorsina Lamons (movant's mother), and Mr. Harvey (movant's former trial counsel).   The following summarizes relevant facts gleaned from their testimony.

### A.   **Dorsina Lamons**

Ms. Lamons testified that in the summer of 2004, before the first trial in this case, Mr. Lamons called her and stated that the Government had made a plea offer. (Tr. 6-8, 12-13.)  Mr. Lamons told his mother that Mr. Harvey had said that the most he could receive in jail was ten years, but that the plea offer was for him to serve six years.  (<u>Id.</u> at 13.)  Mr. Lamons said, "Ma, . . . [t]hey're offering me six.  The max I can get is ten.  So . . . we're going to roll the dice, because I can get my name cleared and I can be acquitted."  (<u>Id.</u> at 8-9.)  Ms. Lamons told her son that she did not want to talk about the offer on the telephone (because she feared her line was being tapped), but that they would discuss the matter further when she arrived in Atlanta in two days for a previously scheduled visit.  (<u>Id.</u> at 6, 12, 14.)

When she arrived in Atlanta, Ms. Lamons accompanied her son to Mr. Harvey's office.  (Tr. 6, 14-15.)  The three of them then met.  (<u>Id.</u> at 15.)  Ms. Lamons asked Mr. Harvey to explain the plea offer; he replied that the offer was for

10

six years, that they were going to roll the dice.  (<u>Id.</u> at 6, 8.)  When Ms. Lamons

asked Mr. Harvey what he meant by that, he stated: "Well, first of all, they don't

have a case.  Second, the max he can get is ten years."  (<u>Id.</u> at 6-7; <u>see also</u> <u>id.</u> at 8,

16-17.)  According to Ms. Lamons, Mr. Harvey then explained that he and Mr.

Lamons had made the decision to reject the plea offer because they could roll the

dice and get him acquitted.  (<u>Id.</u> at 7.)

Although Mr. Harvey gave them no other details of the Government's offer,

he told them that his rejection of it would be a "two liner."  (Tr. 7.)  Mr. Harvey did

not show them an offer letter from the Government, but indicated that Mr. Lamons

had a week to respond to it.  (<u>Id.</u> at 8-9, 17, 21.)  Mr. Harvey also did not discuss the

federal sentencing guidelines.  (<u>Id.</u> at 9.)

Because she is not a lawyer, Ms. Lamons did not understand the plea offer.

(Tr. 13-14.)  So, she asked her son what he thought.  (<u>Id.</u> at 17.)  He replied, "Ma,

they're offering me six years.  The max I can get is ten.  I can get acquitted and my

name will be cleared."  (<u>Id.</u>)  Thus, Mr. Lamons rejected the plea deal and authorized

Mr. Harvey to do so.  (<u>Id.</u>)  Mr. Harvey then excused Ms. Lamons from his office so

that he could talk privately to Mr. Lamons.  (<u>Id.</u> at 7.)

11

When she left Mr. Harvey's office, Ms. Lamons understood that the issue was a six-year offer versus a ten-year maximum. (Tr. 17.) Ms. Lamons said that she was not aware that a single charge against her son carried a mandatory minimum of ten years because, as noted above, Mr. Harvey had told her that the most time her son faced in prison was ten years. (Id. at 21.)

When her son eventually received a prison sentence of 271 months, Ms. Lamons was surprised because Mr. Harvey had said that the maximum was ten years and that the Government did not have a case. (Tr. 9.) Had her son known that he could have received a sentence of that length, he would have taken the offer of six years despite his claimed innocence. (Id. at 9-11, 20-21.) Although Ms. Lamons loves her son and believes in his innocence, she was adamant that she would not lie for him. (Id. at 12, 20.)

**B.    Turhan Jamar Lamons**

Mr. Lamons testified that, before the first trial, Mr. Harvey telephoned him and said that the Government had made a plea offer which would place him in the six to seven year mark, and that he could receive ten years. (Tr. 23-24, 42.)

Later that day, the movant went to Mr. Harvey's office and spoke to him about the plea offer. (Tr. 24, 42-43.) At this meeting, Mr. Harvey relayed to Mr. Lamons

12

that he could receive a maximum of ten years, but that the Government's offer was for six or seven years.  (Id. at 25-26, 42-43.)[6]  The attorney did not say that it was possible for him to receive more than ten years.  (Id.)[7]  Given that the most that he could receive in jail was ten years, and the offer was for six or seven years, Mr. Lamons did not consider the difference to be significant.  (Id. at 28.)  Mr. Lamons asked Mr. Harvey what he thought.  Mr. Harvey responded that the Government did not have much of a case, and asked him what he wanted to do.  (Id.)  Mr. Lamons responded: "Okay.  Well, if ten is all I can get, then we might as well go to trial then."  (Id.)  Mr. Harvey reportedly replied: "Yeah, roll the dice."  (Id.)  This meeting lasted fifteen to twenty minutes.  (Id. at 29-30.)

---

[6] Mr. Harvey did not show an offer letter to Mr. Lamons.  (Tr. 26, 37-38, 40, 43.)  Mr. Lamons did not know whether the Government had conveyed its offer to Mr. Harvey through telephone or letter.  (Id. at 27, 56-57.)  Thus, he did not know to ask to see a letter.  (Id. at 38.)  Mr. Lamons did not know about the July 8, 2004, offer letter until the third trial.  (Id. at 26-27, 40, 56.)

[7] Mr. Harvey never went over the applicable sentencing guidelines.  (Tr. 27-28, 54.)  They never talked about each Count of the Indictment and the possible sentence he might receive if convicted on each Count.  (Id. at 30.)  He also did not discuss which Counts might be grouped together or what sentences might be served consecutively or concurrently.  (Id. at 30-31.)  Although the movant knew the crimes he was charged with committing, he did not know the sentencing ramifications.  (Id. at 41.)

13

Mr. Lamons went a second time to Mr. Harvey's office, this time accompanied by his mother. (Tr. 28-29, 43-44.) Mr. Harvey told them that Mr. Lamons faced ten years in prison, but that the Government's offer was for six to seven years. (Id. at 29.) Mr. Lamons authorized Ms. Harvey to reject the Government's offer. (Id. at 38.) This meeting lasted about fifteen minutes. (Id. at 29.)

After his mother left the room, Mr. Lamons and Mr. Harvey started going through the evidence in preparation for trial. (Tr. 29.) In fact, Mr. Lamons claimed that, after this point, he and Mr. Harvey never discussed the plea offer again. (Id.)[8]

Mr. Lamons never told Mr. Harvey that he was willing to plead guilty. (Tr. 44-45.) However, the movant testified that, had he known that he faced a 271-month prison sentence (about 22.5 years), he would have accepted the Government's offer of six to seven years and pleaded guilty. (Id. at 31.) Mr. Lamons explained that, when he believed the maximum prison term he faced was ten years, he was willing to go to trial and risk conviction, given that the plea offer was six or seven years.

---

[8] The initial telephone call from Mr. Harvey, his first meeting with Mr. Harvey, and the meeting he and his mother had with Mr. Harvey all occurred within a week's time. (Tr. 25, 42-43.) Mr. Harvey indicated that they needed to respond quickly to the Government's offer. (Id. at 25.)

14

(Id. at 31-32.)  That decision would have been different had he known that he faced twenty-two years in prison.  (Id. at 32.)

Although the movant expressed a desire to plead guilty, he was reluctant to accept responsibility for his actions, as the following makes clear:

> Q.   Now, again, you testified that you had nothing to do with the [A]irTran?
>
> A.   Yes, I did.
>
> Q.   But you've been convicted?
>
> A.   Yes.
>
> Q.   You in fact made the false bomb threat?
>
> A.   I was convicted.
>
> Q.   And you did it?
>
> A.   I was convicted.
>
> Q.   You in fact set the lavatory fire?
>
> A.   Sir, I was convicted on all three counts.
>
> Q.   Because you were guilty?
>
> A.   That's not in dispute.  Yes, they thought I was guilty, I was convicted on all three counts.

(Tr. 50-51.)

### C.    <u>Bruce Harvey, Esq.</u>

Mr. Harvey has been a criminal defense attorney in the Atlanta area since 1977.  (Tr. 58.)  During that time, he has been involved in approximately 5,000 criminal cases of all types and has tried between 300 and 500 cases.  (<u>Id.</u> at 58-59.)

Mr. Harvey testified that when he receives a plea offer, he reviews it with his client.  (Tr. 59-60.)  However, the manner in which he reviews the offer with a client varies with the situation.  (<u>Id.</u> at 60.)  For example, he may review the offer with the client in person or discuss it with him over the telephone.  (<u>Id.</u>)  If the offer is in writing, Mr. Harvey sometimes shares the letter with the client, but sometimes he does not, electing instead to communicate its contents orally.  (<u>Id.</u>)

Mr. Harvey represented Mr. Lamons during the first two trials.  (Tr. 60-61.) He identified Defense Exhibit 1 as the offer letter received from the Assistant United States Attorney, Jane Swift, regarding Mr. Lamons.  (<u>Id.</u> at 60-61.)  With regard to the offer letter, Mr. Harvey summarized its relevant content.  According to the Government's calculations, the defendant faced a total sentence of 308 to 355 months if convicted.  However, the Government offered 81 months if Mr. Lamons agreed to plead guilty.  (<u>Id.</u> at 61-62.)

Mr. Harvey testified that, having received that plea offer, he would have reviewed it with Mr. Lamons.  (Tr. 63.)  Although he had no specific recollection of meeting with Mr. Lamons to discuss the plea offer given the passage of time (id. at 64-65), Mr. Harvey was "[a]bsolutely" sure that he communicated the contents of the plea offer to him.  (Id. at 63.)  Mr. Harvey's recollection was that Mr. Lamons rejected the plea offer "[b]ecause he wanted to go to trial.  He always asserted his innocence."  (Id.)  The movant/defendant rejected all plea offers and authorized Mr. Harvey to reject this one.[9]  (Id. at 63-64.)  Mr. Harvey never told Mr. Lamons that, if he went to trial, he would face no more than ten years in prison.  (Id. at 64.)

III.   **ANALYSIS**

Mr. Lamons claims that Mr. Harvey advised him that he faced between six and seven years in prison if he accepted the Government's offer and a maximum of ten

---

[9] Mr. Harvey identified Government Exhibit 1 as the July 16, 2004 letter he sent to Ms. Swift rejecting the plea offer.  (Tr. 62.)  That letter reads in full as follows:

> Please accept this letter as a response to your letter dated July 8, 2004, regarding a proposed plea agreement.  I have reviewed your offer very carefully with my client; and, I am authorized to state he respectfully declines your offer.

(Gov't Post-Hr'g Br. Ex. C [274-3] 1 (Gov't Ex. 1).)

17

years if he went to trial and was convicted.  Mr. Lamons, who eventually received a 271-month prison sentence, states that he would have accepted the plea offer had Mr. Harvey correctly advised him that he faced such a lengthy sentence if he lost at trial.  Mr. Lamons asserts that he received ineffective assistance of counsel in violation of his Sixth Amendment rights, and that he suffered prejudice as a result.

To obtain relief under § 2255, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  "[T]o obtain collateral relief a [movant] must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."[10]  The Eleventh Circuit applies Hill to the situation

_____

[10] That two part test requires a § 2255 movant to show that (1) counsel's performance was deficient such that it was below objectively reasonable standards, and (2) the deficient performance prejudiced the movant.  Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  A court need not address both parts if the movant "makes an insufficient showing on one."  Id. at 697.

18

raised here–a defendant who claims that he elected not to accept a plea offer based on ineffective assistance of counsel.  Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (per curiam).  According to Coulter,

> [t]o succeed on such a claim, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  Hill, 474 U.S. at 59, 106 S. Ct. at 370.  In other words, in this instance, [movant] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial."  Hill, 474 U.S. at 59, 106 S. Ct. at 370.

Id.  The Court thus considers the two elements of movant's claim separately below.

### A.    Mr. Harvey's Performance Was Not Deficient

The Court has weighed the parties' testimony and judged the credibility of the witnesses.  Given the record in this case, the Court finds that movant has failed to show that Mr. Harvey's performance was deficient.  In making this finding, the Court specifically credits the testimony of Mr. Harvey over that of movant and his mother.

---

19

Mr. Harvey testified that he was absolutely sure that he had communicated the contents of the plea offer to Mr. Lamons, and that movant rejected it because he wanted to go to trial and always asserted his innocence. Finally, Mr. Harvey testified that he never told Mr. Lamons that, if he went to trial, he would face no more than ten years in prison.

Mr. Harvey has been a member of the bar of the Northern District of Georgia for many years, and is well known to the Court. He has demonstrated himself to be an ethical, able, and zealous advocate for the clients he has represented. Mr. Harvey had no specific recollection of his conversation with Mr. Lamons about the plea offer given the passage of time (about seven years) and the numerous other cases he has handled in the interim; however, the Court finds incredible any notion that Mr. Harvey failed to communicate the Government's plea offer accurately to Mr. Lamons or that Mr. Harvey advised Mr. Lamons that he faced a maximum of only ten years in prison given the serious charges he faced.[11]

---

[11] Mr. Harvey's failure to have a specific recollection about his discussion with Mr. Lamons about the plea agreement does not undermine his testimony that it is his practice to discuss plea offers with his clients. Dasher v. Attorney Gen., Fla., 574 F.3d 1310, 1314 (11th Cir. 2009) ("[P]rofessional people should be able to prove the manner in which they routinely handle matters that recur in their work, in order to show that they followed that routine in a particular instance.") (internal quotations and citation omitted). Moreover, the rejection letter that Mr. Harvey wrote to Ms.

In contrast to Mr. Harvey stands Mr. Lamons, who has shown throughout this case that he lacks honesty and integrity.  One can begin with the crimes of which movant has been convicted.  For example, Mr. Lamons has a prior conviction for dishonest behavior–forging checks.  In this case, Mr. Lamons made a bomb threat against an AirTran passenger jet which, fortunately, turned out to be false.  Nevertheless, he was convicted of conveying false information.  Moreover, while Mr. Lamons denied under oath in the first trial that he set a fire in a ComAir jet's lavatory, the jury in a subsequent trial (in which Mr. Lamons did not testify) found him guilty of that offense.  Obviously, the movant's testimony in the first trial denying that he engaged in misconduct on that ComAir flight was false.

Finally, the movant's behavior while on bond in this case shows that he cannot be trusted.  As described in detail above, Mr. Lamons claimed to be ill on numerous occasions when he was not, going so far as to forge documents that appeared to be authored by his physician and submit them to his attorney, who in turn submitted them to the Court.  The claim by Mr. Lamons that he did not know that his lies

---

Swift shows that he (Harvey) had reviewed he Government's offer very carefully with his client.  (See Gov't Ex. 1, supra note 9.)

21

would be incorporated into filings made with the Court rings hollow.  Judge Vining made findings about this dishonest behavior at Mr. Lamons's sentencing.

The movant's testimony concerning the deficient advice that Mr. Harvey provided about the maximum ten-year sentence he faced is supported by his mother. However, the Court cannot credit her testimony either.  Ms. Lamons obviously loves her son and would do anything to help him.  Although she denies that she would lie for him, Ms. Lamons has an understandable bias that might have led her to accept her son's self-serving recollection, perceive it as the truth, and repeat it under oath.[12]

The movant's failure to prove one element of the two-part test is fatal to his claims.    Strickland, 466 U.S. at 697.    Accordingly, the undersigned **RECOMMENDS** that defendant's Motion to Vacate on the ground of ineffective assistance of counsel be **DENIED**.

_____

[12] Additionally, given Ms. Lamons's admitted lack of familiarity with the law, she could have misunderstood Mr. Harvey, who may have said that ten years was a minimum sentence, not a maximum sentence.

**B.     Movant Fails to Show That, But For Counsel's Error, He Would Have Pleaded Guilty and Not Gone to Trial**

Although the second element of the test may be disregarded given movant's inability to establish the first, the undersigned continues the analysis to provide the District Court with a full report.

As noted above, movant also "'must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would not have insisted on going to trial.'" Coulter, 60 F.3d at 1504 (quoting Hill, 474 U.S. at 59).  However, "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."  Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); see also Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (11th Cir. 1986) (noting that claimant "cites no evidence prior to his conviction which would indicate any desire on his part to plead guilty," and expressing serious "doubt whether [his] after-the-fact testimony regarding his wishes in and of itself would be sufficient to establish that prior to trial, but for [defense counsel's] actions, there was a reasonable probability he would have accepted the plea agreement").

All movant has in this case is after-the-fact testimony by him and his mother asserting that, had he known that he faced over twenty-two years in prison, he would

have accepted the plea offer.  Under Eleventh Circuit precedent, that is not enough.

Diaz, 930 F.2d at 835; see also Moore v. United States, No. 1:06-CV-2145-JOF,

2010 WL 4386933, at *4 (N.D. Ga. Mar. 26, 2010) (applying Diaz's holding that

after-the-fact testimony concerning desire to plead is insufficient to establish that,

but for counsel's error, defendant would have accepted plea).

Moreover, the movant's conduct throughout these proceedings shows that he

did not want to plead guilty.  He told Mr. Harvey that he wanted to fight the charges

in order to clear his name.  Mr. Lamons took the stand in the first trial and denied

any culpability in either the AirTran incident or the ComAir incident.  He appealed

the adverse jury verdicts to the Eleventh Circuit and lost.  In pursuing this motion

under § 2255, Mr. Lamons claims that he would have pled guilty.  However, at the

evidentiary hearing, Mr. Lamons could not bring himself to accept responsibility for

his actions.  In his testimony (quoted supra page 15), movant would only concede

that he "was convicted" and that "they" (i.e., the jury) thought he committed the acts

of which he was accused.  Given this refusal to admit guilt years after his conviction,

it is highly unlikely that movant would have done so before his conviction.  See

Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who

maintains his innocence at all the stages of his criminal prosecution and shows no

indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer.").

The Court agrees with the Government that Mr. Lamons's self-serving, after-the-fact testimony that he would have taken the plea does not convert that lost opportunity to plead guilty into constitutional prejudice. Accordingly, because movant cannot establish the second element of his claim, the undersigned **RECOMMENDS** that the Motion to Vacate on the ground of ineffective assistance of counsel be **DENIED**.

## IV.   CERTIFICATE OF APPEALABILITY

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2254 Cases, Rule 11, 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Id. Section 2253(c)(2) of Title 28 states that a certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v . McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted).  A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Lamarca v. Sec'y, Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009) (internal quotations omitted) (citing Miller-El v. Cockrell, 537 U.S. 322, 337, 342 (2003)).

The undersigned has made a credibility determination here and accepted Mr. Harvey's testimony over that of the movant and his mother.  In such situations, a certificate of appealability is not warranted.  See United States v. Washington, No. 11-6073, 2011 WL 2210029, at *1 (10th Cir. June 8, 2011) (because no reasonable jurist could doubt the correctness of the district court's ruling, which made a credibility determination in accepting the testimony of the attorney over that of his former client in an ineffective assistance of counsel claim, application for certificate

26

of appealability was denied).  If the District Court agrees with the foregoing recommendation, then no certificate of appealability should be issued.

## V.   **CONCLUSION**

For the reasons explained above, the undersigned **RECOMMENDS** that portion of Turhan Jamar Lamons's Motion to Vacate [250] based on ineffective assistance of counsel be **DENIED**, and that the District Court **DECLINE** to issue a certificate of appealability.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED,** this 10th day of August, 2011.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

27

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TURHAN JAMAR LAMONS,
Inmate # BOP Reg. 54402-019,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

CIVIL ACTION FILE NO.
4:09-CV-180-RLV

CRIMINAL ACTION FILE NO.
4:03-CR-046-01-RLV

MOTION TO VACATE
28 U.S.C. § 2255

## ORDER FOR SERVICE OF
## FINAL REPORT AND RECOMMENDATION

Let this Final Report and Recommendation of the United States Magistrate
Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil
Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together
with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if
any, to the Final Report and Recommendation within fourteen (14) days of the
receipt of this Order.  Should objections be filed, they shall specify with particularity
the alleged error(s) made (including reference by page number to any transcripts if

applicable) and shall be served upon the opposing party.  The party filing objections

will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the District Court.  If no objections are filed, the Final Report and

Recommendation may be adopted as the opinion and order of the District Court, and

any appellate review of factual findings will be limited to a plain error review.

United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with

objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED,** this 10th day of August, 2011.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2